IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN J. BLACKMAN,

     Petitioner,                       No. CIV S-03-1824 LKK KJM P

   vs.

GAIL LEWIS, Warden,

     Respondent.                  FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction on charges of residential robbery, in violation of California Penal Code § 211, and kidnapping for the purpose of carjacking, in violation of California Penal Code § 209.5(a). He seeks relief on the grounds that his right to due process was violated by jury instruction error. Petitioner presented his claims on direct appeal to the California Court of Appeal, where they were denied. Answer, Exs. C, H, I. He presented the claims in a habeas petition to the California Supreme Court, which denied them summarily. Id., Exs. D, E.

/////

/////

/////

I. <u>Background</u>[1]

    On October 4, 1998, [petitioner's co-defendant] Ussery telephoned his half-brother Michael, who had given him small sums of money in the past, and asked to borrow a thousand dollars.[FN]  Michael refused and hung up.  Ussery's repeated calls were unavailing.  Ussery knew Michael had $4000 in cash to buy a new car.

    [FN] Michael shares the same surname as appellant Ussery; we refer to him by his first name for clarity.

    Later that day, Ussery, accompanied by Blackmon and Mflame Mayon, arrived at the home of Robert Moore, where Michael was staying.  Beverly Morris, a teenager who babysat Moore's young child, was also present.  Michael was not at home, and Ussery and Morris went to the store to call him on his cell phone.  Michael picked them up and drove them back to Moore's residence.  Michael had $950 in cash with him in his jacket, which was on the floor behind the driver's seat.  Michael and Ussery stayed outside to talk.  Ussery again asked for a loan, becoming angry and argumentative when Michael refused.

    Michael went into a bedroom of the house to make a phone call.  Ussery and Morris joined him.  Someone put a gun to Michael's head and told him to get on the floor.  Michael did not recognize the voice.  Moore, the apartment resident, was brought by Mayon into the bedroom at gunpoint.  Mayon ordered Moore to lie on the floor and close his eyes.  Moore saw Ussery, Michael and Morris in the bedroom, but was unsure whether Blackmon was in the bedroom or in the hallway.  When Moore complied with Mayon's orders, Mayon told Ussery to tie him up.  A few minutes later, Moore's wrists were tied behind his back, and he was gagged with a sock.  Mayon demanded the money from Moore's pockets, which Moore estimated at $30.

    Mayon told Morris, the babysitter, to go into the hallway.  There, her hands were tied behind her back and a sock was tied around her mouth.  Mayon forced Michael to crawl on his stomach from the bedroom into the living room, holding the gun to his head.  Michael heard Ussery comment: "Please don't kill my brother."  When Mayon asked where the $4000 was, Michael told him $1000 was in the car.  At Mayon's direction, Blackmon went to the car, and returned with $950.  Mayon demanded the rest of the money, and Michael told him it was at his girlfriend's house on the other side of town.  Michael hoped to get out of the house and find help.  Mayon responded: "We're going for a ride to get the money."

---

    [1] This statement of facts is taken from the November 29, 2001 opinion on direct appeal by the California Court of Appeal for the First Appellate District (hereinafter Opinion) filed on May 16, 2007 as Exhibit C to Respondent's Answer.

2

      Mayon, Ussery, and Blackmon walked Michael outside to his car, where Mayon ordered Michael into the driver's seat. Ussery and Blackmon got into the back seat. Mayon did not order them to do so, nor did he point the gun at either of them. Michael did not know where he was going, but did not want to return to the house. He asked permission to call his girlfriend, but actually called his girlfriend's brother, trying to surreptitiously signal his need for help. The brother's wife answered the phone and said he was in Cache Creek. Blackmon said: "Cache Creek? We're not going there. There's a lot of police." Michael put the phone down, but did not disconnect it.

      Michael drove into a restaurant parking lot. Mayon asked if he had an ATM card, saying he wanted to go to a bank. Michael said the bank was closed, and suggested they use a gas station ATM. He drove to the station, where Mayon instructed him to park far away from the front door. Michael and Mayon entered the station's store, which had video cameras. Michael did not have his ATM card, but refused to leave the store. He ran behind a bulletproof window and called 911. Mayon ran to the car, which was later stopped by police after a freeway chase. Mayon was driving, with Blackmon in the front seat and Ussery in the back. A loaded semi-automatic handgun was found on the right side of the driver's seat. The car and its occupants were identified by Michael and by Moore, who had untied himself and called police. Mayon had $15 in his pocket.

      Blackmon had $950, $100 in his pocket and $850 in his shoe. He waived his Miranda[FN] rights and told police he was just in the car, cruising with his friends. He claimed he had earned the money at his job. Ussery also waived his Miranda rights, and told the officer who was transporting him to the police station that he had fought with his brother and went over to talk about it. Ussery also asked the officer: "We can get a lot of years for what we did, huh?"

> [FN] Miranda v. Arizona (1966) 384 U.S. 436 (Miranda).

      Mayon, Blackmon and Ussery were charged with first degree residential robbery of Moore and Michael, and kidnapping for carjacking. Each count alleged a principal was armed with a firearm. Mayon was charged with additional counts, and was tried separately. The court denied a motion for the severance of Blackmon and Ussery's trials. Appellants were convicted as charged. Ussery's motion for a new trial was denied, and he was sentenced to six years, four months for the robberies, and seven years to life for the kidnapping for carjacking. Blackmon received an identical sentence.

(Opinion at 2-4.)

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although "AEDPA does not require a federal habeas court to adopt any one methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002). It is appropriate to look to lower court

4

decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, the court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). So long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief. Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000). However, when the state court does not issue a "reasoned opinion," this court must undertaken an independent review of the claims. Delgado v. Lewis, 223 F.3d 976, 982. (9th Cir. 2002).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2003). Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal law. Id.

III. Petitioner's Jury Instruction Claims

Petitioner raises two claims of jury instruction error.[2] First, he claims that the trial court erred in failing to instruct on carjacking as a lesser included offense to kidnapping for the purpose of carjacking. Am. Pet. at 5-6. Second, he claims that the trial court erred in defining kidnapping for the purpose of carjacking. After setting forth the applicable legal principles, the court will evaluate these claims in turn below.

/////

/////

---

[2] The December 1, 2004 amended petition, upon which this action is proceeding, contains six claims. However, by order filed March 30, 2006, this action was ordered to proceed only on claims two and three.

5

A. Legal Standards

A challenge to jury instructions does not generally state a federal constitutional claim. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981), aff'd 703 F.2d 575 (9th Cir. 1983) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)). See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process."). The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome. See McKinney v. Rees, 993 F.2d 1378, 1385 (9th Cir. 1993). Where the challenge is to a failure to give an instruction, petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

/////
/////
/////
/////
/////

6

B. Lesser Included Offense

Petitioner claims that his right to due process was violated by the trial court's failure to instruct the jury, sua sponte, that carjacking is a lesser included offense to the crime of kidnapping for the purpose of carjacking. Petitioner describes his claim as follows:

> The trial court instructed the jury with the lesser related offense of kidnapping, at the request of the district attorney. It did not, however, instruct the jury with the lesser included offense of carjacking to the charge of kidnapping for carjacking. The crime of carjacking is a necessarily [lesser included] offense within the crime of kidnapping for the purpose of carjacking. The failure to give this lesser included offense is erroneous.

(Am. Pet. at 5 & page 3 of attachment (parentheticals omitted)). The California Court of Appeal denied this claim on state law grounds. (Opinion at 8-9.)

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. See Beck v. Alabama, 447 U.S. 625, 638 (1980). The Supreme Court has not decided whether this rationale also extends to non-capital cases. See Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999). The Ninth Circuit, like several other federal circuits, has declined to extend Beck to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984); see also Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988); Trujillo v. Sullivan, 815 F.2d 597, 602 (10th Cir. 1987); Perry v. Smith, 810 F.2d 1078, 1080 (11th Cir. 1987).

Because petitioner's was not a capital case, the state trial court's failure to sua sponte give a lesser included offense instruction did not rise to the level of a constitutional error for which federal habeas relief is available, even assuming that carjacking is a lesser included offense to the crime of kidnapping for the purpose of carjacking. See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included

1  offenses in a non-capital case does not present a federal constitutional question."). To find a
2  constitutional right to a lesser-included offense instruction in this non-capital case would require
3  the application of a new rule of law, an exercise this court may not undertake in a habeas
4  proceeding. Teague v. Lane, 489 U.S. 28 (1989); Solis, 219 F.3d at 929 (habeas relief for failure
5  to instruct on lesser included offense in non-capital case barred by Teague because it would
6  require the application of a new constitutional rule); Turner, 63 F.3d at 819 (same). Under these
7  circumstances, the decision of the California courts denying petitioner relief as to this claim was
8  not contrary to clearly established federal law and should not be set aside.

C. Instruction on Kidnapping for the Purpose of Carjacking

Petitioner's second claim is that his right to due process was violated by the giving of an erroneous jury instruction, which defined kidnapping for the purpose of carjacking.

Petitioner's jury was instructed with CALJIC No. 9.55, as follows: "Where a person is charged with the crime of kidnapping for the purpose of carjacking, it is not necessary to establish that this purpose was accomplished. The crime is complete if the kidnapping is done for that purpose." (Clerk's Transcript on Appeal (CT) at 162.) After petitioner's trial was concluded in November 1999, the following use note was added to CALJIC No. 9.55: "Do not give this instruction in a case charging kidnapping during the commission of carjacking, Penal Code § 209.5. Kidnapping during the commission of carjacking does indeed require a completed crime of carjacking. (People v. Jones, 75 Cal.App.4th 616, 625, 89 Cal.Rptr.2d 485 (2d Dist.1999).)." It therefore appears that the trial court erred in giving CALJIC No. 9.55 at petitioner's trial. Petitioner argues that this error resulted in prejudice and violated his right to due process. (Am. Pet. at 6 & page 5 of attachment.)

/////
/////
/////
/////

1    The California Court of Appeal rejected petitioner's challenge to the giving of

2 CALJIC No. 9.55 on the grounds that any error was harmless under the circumstances of this

3 case. The appellate court explained its reasoning as follows:

> Blackmon relies on People v. Jones (1999) 75 Cal.App.4th 616, 628, which held that "CALJIC No. 9.55 is erroneous when used in connection with the crime of kidnapping during the commission of carjacking because a completed carjacking is a necessary element of that crime . . . ." In Jones, however, the carjacking was not completed (id. at p. 625), contrary to the situation presented here. Furthermore, while Blackmon's counsel argued that the kidnapping did not facilitate the carjacking, she did not question whether the carjacking had occurred. Any error in instructing the jury with CALJIC No. 9.55 was harmless.

(Opinion at 9.)

    In order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine: (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht from the constitutional error. Inthavong v. LaMarque, 420 F.3d 1055, 1059 (9th Cir. 2005), cert. denied, 547 U.S. 1059 (2006); see also Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) (when a state court determines that a constitutional error is harmless, a federal court may not award habeas relief under § 2254 unless that harmlessness determination itself was unreasonable). Both of these tests must be satisfied before relief can be granted. Inthavong, 420 F.3d at 1061. On habeas review, the harmless error standard set forth in Brecht applies to jury instructions that omit an element of the crime. California v. Roy, 519 U.S. 2, 4-6 (1996); Evanchyk v. Stewart, 340 F.3d 933, 941 (9th Cir. 2003). As explained above, under Brecht a petitioner is not entitled to habeas relief unless he/she can establish that a trial error "had a substantial or injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

    In California, carjacking is defined as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or

immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." Cal. Penal Code § 215(a). Petitioner argues that the jury may not have made the required finding that the carjacking was completed during the kidnapping. (Am. Pet. at 6 & page 5 of attachment.) Instead, according to petitioner, the jury may have found that the carjacking was not completed until after the kidnapping was over (i.e., until after he and his co-defendants abandoned Michael and drove away from the convenience store without him) because, prior to that time, the vehicle did not leave Michael's "possession."[3] (Id.; Answer, Ex. H (petitioner's opening brief on appeal) at 30-31.) Petitioner argues that if the jury concluded the carjacking was not complete (or did not start) until after the kidnapping was over, CALJIC No. 9.55 would have allowed the jury to convict him of kidnapping during the commission of a carjacking, a crime he did not commit. Petitioner also appears to be arguing that if the carjacking did not occur until after the kidnapping was over, the kidnapping could not have been undertaken "for the purpose of carjacking," as required by the charging statute. Finally, petitioner argues that the error in giving CALJIC No. 9.55 was compounded by the trial court's failure to give a jury instruction on the lesser included offense of simple carjacking. (Am. Pet., page 5 of attachment.)

Contrary to petitioner's arguments in this regard, there is no evidence that the jury found, or could have found, that the carjacking was not complete until the vehicle was taken from Michael's physical possession. The facts of this case demonstrate that petitioner and his

---

[3] In the state appellate court, petitioner argued:

> It was only when Michael escaped at the gas station that the Mustang was "taken" from Michael's presence and this crime was completed. [¶] The jury could have determined that Michael lost possession of his car at the gas station, after he escaped from Mayon, who then drove off in the Mustang. Michael chose to leave the Moore home and he chose where he was going to drive.

(Answer, Ex. H at 30.)

co-defendants effectively took Michael's car from his possession and intended to remain in the car until they were able to obtain Michael's money. There can be no dispute that Michael's vehicle was taken from him against his will, in violation of Penal Code § 215(a), even though he was physically in the car. As noted by the state appellate court, "[w]hile Michael drove the car from Moore's home to the station, he did so at gunpoint." (Opinion at 8.) As soon as Michael was forced by petitioner and his accomplices to get into his car and drive off, the carjacking was complete. See People v. Gray, 66 Cal.App.4th 973, 985 (1998) (in the context of a carjacking, "the owner or possessor of a vehicle may be deprived of possession not only when the perpetrator physically forces the victim out of the vehicle, but also when the victim remains in the car and the defendant exercises dominion and control over the car by force or fear."). Petitioner's argument that Michael only lost possession of his vehicle when he was no longer physically in the car is unavailing. In any event, as noted by the state appellate court, petitioner's counsel essentially conceded that the carjacking occurred. Under these circumstances, petitioner cannot show the trial court's failure to instruct petitioner's jury that the carjacking must be completed in order for petitioner to be found guilty of kidnapping for the purpose of carjacking had a "substantial or injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

The decision of the state courts that any error in the giving of CALJIC No. 9.55 was harmless is not contrary to, or an unreasonable application of Brecht. Accordingly, petitioner is not entitled to relief on this claim.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

11

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within ten days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  DATED:  March 25, 2008.

U.S. MAGISTRATE JUDGE

8:blackman1824.hc